UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KENNETH STEAGALL,                                    CASE NO.: 1:12-CV-876

        Plaintiff,                                    Barrett, J.
                                                     Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


## OPINION AND ORDER

This matter is before the Court on the Magistrate Judge's Report and Recommendation ("Report"), which recommends affirming the non-disability finding of Defendant Commissioner of Social Security. (Doc. 13). Notice was given to the parties under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b). (Doc. 13, p. 30). Plaintiff Kenneth Steagall filed objections to the Report and Recommendation. (Doc. 17), and Defendant Commissioner of Social Security filed a response to Plaintiff's objections. (Doc. 20). This matter is now ripe for review.

## I.    PROCEDURAL BACKGROUND

As explained by the Magistrate Judge, Plaintiff's quest for Disability Insurance Benefits ("DIB") has a long history. Instead of recounting every detail of the procedural history, the Court incorporates here the thorough and accurate explanation of the Magistrate Judge. (Doc. 13). To briefly summarize, Plaintiff first applied for DIB in April 2004, alleging disability due to back and neck pain resulting from a November 2002 car accident, with a disability onset date, as amended, of July 29, 2003. His date last insured was December 31, 2009.

His application was denied throughout the administrative process and that denial became the final decision of the Commissioner. On his first appeal of the decision, the Magistrate Judge

recommended affirming the Commissioner's denial, but the undersigned determined that the case should be remanded because the ALJ failed to give good reasons for not giving weight to the opinions and that the failure was not de minimis.

On remand, Plaintiff's application was denied again in a final decision of the Commissioner. Plaintiff then filed this second appeal of the decision. In the Report and Recommendation, the Magistrate Judge recommended affirming the Commissioner's non-disability determination. Plaintiff now objects to the Magistrate Judge's recommendation.

## II.    <u>STANDARDS OF REVIEW</u>

When objections to a magistrate judge's report and recommendation are received on a dispositive matter, the assigned district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*; *see also* 28 U.S.C. § 636(b)(1). General objections are insufficient to preserve any issues for review: "[a] general objection to the entirety of the magistrate[ judge]'s report has the same effects as would a failure to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Only specific objections are entitled to de novo review under the Magistrate Judge's Act, 28 U.S.C. § 636. *Id.*; *see also Fairfield v. Wacha*, No. 1:07-cv-948, 2008 U.S. Dist. LEXIS 15119, at *4-5 (W.D. Mich. Feb. 28, 2008) (citing *Ferguson v. Comm'r of Soc. Sec. Admin.,* No. 1:07-cv-247, 2008 U.S. Dist. LEXIS 5965 (W.D. Mich. Jan. 28, 2008); *Westbrook v. O'Brien*, No. 1:07-cv-937, 2008 U.S. Dist. LEXIS 5965 (W.D. Mich. Nov. 15, 2007); *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986)).

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). First, the Court must determine if substantial evidence supports the Commissioner's decision. Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978). Second, the Court must determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec'y*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen,* 478 F.3d at 746). *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545–46 (6th Cir. 2004) (reversal required even though ALJ' s decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

IV.    **ANALYSIS**

Plaintiff objects to the Magistrate Judge's report on four overriding issues. Each of his objections is addressed below.

    A.    **Objections as to the Magistrate Judge's "Good Reasons" Analysis**

        1.  **Dr. Murphy**

Plaintiff argues that the Magistrate Judge erroneously rejected Dr. Murphy's RFC and disability opinions because the only "good reasons" identified were her lack of objective tests and her failure to perform a full functional evaluation. (Doc. 17, p. 11). He contends that the ALJ did not reject Dr. Murphy's opinions because she did not perform a full functional analysis, and that a lack of objective testing is insufficient to discredit her opinion. (Doc. 17, p. 11). He thus argues that Dr. Murphy's opinion still was entitled to more weight than the opinions of Dr. Hill and Dr. Hutson. (Doc. 17, p. 11).

Plaintiff's objection is not well taken and it misrepresents the decision of the Magistrate Judge. Contrary to Plaintiff's argument, the Magistrate Judge did not identify the lack of objective tests and the failure to perform a "full functional evaluation" as the only "good reasons" given by the ALJ. The Magistrate Judge specifically cited to the ALJ's multiple reasons for rejecting Dr. Murphy's opinion that are consistent with 20 C.F.R. § 404.1527. Those reasons included that Dr. Murphy's opinions were not supported by treatment notes documenting observations consistent with disability, and that there was "very little evidence or discussion about positive findings on examination, objective testing or other medical bases for her opinions." (Doc. 13, p. 13). The Magistrate Judge also noted that the ALJ considered others factors in discounting Dr. Murphy's opinion, including but not limited to the short amount of time Dr. Murphy treated Plaintiff, her reliance on Plaintiff's reports of injuries, her significant focus on Plaintiff's financial status which has no bearing on disability, the lack of indication that Dr. Murphy understood the definition of disability under the Social Security Act, and the fact that a physician's statement of disability is not determinative of the ultimate issue. (Doc. 13, p. 13).

After citing to those multiple reasons, the Magistrate Judge then addressed Plaintiff's specific contention that the ALJ erred by suggesting Dr. Murphy was required to cite to objective tests for her opinions.  (Doc. 13, p. 13).  In addressing that argument, the Magistrate Judge considered and correctly rejected the exact same argument Plaintiff raises again here (Doc. 13, pp. 13-14), which is that Dr. Murphy's opinion could be given weight because "[a] summary by an attending physician made over a period of time need not be accompanied by a description of the specific tests in order to be regarded as credible and substantial" (Doc. 17, p. 11); *see also Bull v. Comm'r of Soc. Sec.*, 629 F. Supp. 2d 768, 780-81 (S.D. Ohio 2008).  In rejecting Plaintiff's argument, the Magistrate Judge correctly recognized (Doc. 13, pp. 13-14) that the "weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record."  20 C.F.R. § 404.1527(c).  As the Magistrate Judge acknowledged, the ALJ determined consistent with the record evidence that Dr. Murphy's opinion was based on minimal medical evidence concerning the relevant impairments and that she had no treatment notes documenting any observations that are consistent with disability.  The undersigned thus agrees that the ALJ properly discounted the opinions of Dr. Murphy on that basis.

Plaintiff's additional argument that the ALJ did not discredit Dr. Murphy because she failed to perform a "full functional analysis" misconstrues the Magistrate Judge's statement.  The Magistrate Judge did not determine that the ALJ specifically cited Dr. Murphy's failure to perform a "full functional analysis" to discredit the opinion; rather, she correctly recognized that Dr. Murphy's statement that she did not perform a "full functional analysis" supported the good reasons given by the ALJ for discrediting Dr. Murphy's opinion, and specifically, the ALJ's determination that Dr. Murphy's opinion lacked much support in regards to medical evidence and

treatment notes.  Plaintiff's sole conclusory statement that Dr. Murphy's opinion was "based upon her treatment of [Plaintiff]" is insufficient to contradict that conclusion.

Accordingly, the Court finds that the ALJ articulated "good reasons" for not discounting Dr. Murphy's opinions, and these objections are overruled.

### 2.  Dr. Wunder

Plaintiff argues that the Magistrate Judge erroneously determined that the ALJ gave "good reasons" for rejecting Dr. Wunder's opinions because the ALJ "selectively rejected" evidence supporting Dr. Wunder's opinions.  (Doc. 17, p. 12).  To exemplify, Plaintiff cites to evidence that Dr. Hutson agreed with Dr. Wunder's findings that Plaintiff had L3-4 instability, that the x-rays document the instability, and that Plaintiff had degenerative spondylotisthesis and chronic L5 radiculopathy. (Doc. 17, p. 12). Plaintiff contends that the Magistrate Judge erroneously rejected those consistencies as "minimal agreement."  (Doc. 17, p. 12).  Plaintiff further cites to Dr. Shah's review of the 2008 MRI, contending it was consistent with Dr. Wunder's opinions but was not considered by the ALJ.  (Doc. 17, p. 12).

Plaintiff is correct that an ALJ may not selectively ignore significantly probative evidence of disability without a sufficient explanation.  *See Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987); *Rossman v. Comm'r of Soc. Sec.*, No. 1:11-cv-508. 2012 U.S. Dist. LEXIS 117064, at *31-32, 34 (S.D. Ohio Aug. 20, 2012), *adopted by*, 2012 U.S. Dist. LEXIS 130432 (S.D. Ohio. Sept. 13, 2012).  This, however, is not the case where the ALJ ignored such significant probative evidence of disability.  The ALJ expressly discussed the relevant medical evidence concerning L3-4 instability, L5 radiculopathy, and degenerative spondylotisthesis in his decision, as well as Dr. Wunder's opinions relating to the same.  (Tr. 599-605).  Yet, the ALJ also went to great lengths to explain the numerous inconsistencies

6

within Dr. Wunder's own findings and with many other records concerning those conditions that made Dr. Wunder's opinions unreliable. (Tr. 603-05). Dr. Hutson testified consistent with that explanation, noting specifically his disagreement with Dr. Wunder's opinion that Plaintiff's condition worsened to the point of disability. (Tr. 955). Thus, having reviewed the record de novo, the Court agrees with the Magistrate Judge (Doc. 13, p. 20) that the few instances in which Dr. Wunder's opinions could be described as consistent with other medical evidence do not overcome the more numerous and more significant inconsistencies in Dr. Wunder's opinions that were discussed by the ALJ.

The Court also agrees with the Magistrate Judge that the ALJ did not commit reversible error by failing to expressly assess the February 2009 examination record of Dr. Shah concerning his reading of the 2008 MRI, which Plaintiff contends is consistent with Dr. Wunder's opinions. An ALJ's failure to discuss all of the testimony and evidence presented to him does not mean the ALJ "failed to consider" that evidence. *Loral Defense Systems-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999). "'An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Id.* (quoting *NLRB v. Beverly Enterprises-Massachusetts*, 174 F.3d 13, 26 (1st Cir. 1999)). Likewise, an ALJ can resolve conflicts in testimony through his factual findings as a whole without expressly addressing every piece of conflicting testimony. *Id.* (internal quotations omitted). Here, the ALJ did just that. As the Magistrate Judge pointed out, the ALJ discounted the 2008 MRI as inconclusive, which he supported by accurately referencing documentation that indicated the radiologist who read the 2008 MRI described it as "significantly limited," documentation from Dr. Romanowski who "reported in May 2008 that there was no obvious nerve root impingement on the MRI study," and documentation from Dr. Romanowski showing clinical examinations consistent with the

ALJ's conclusion.  (Doc. 13, p. 21); (Tr. 726, 814).  Although Plaintiff is correct that Dr. Shah's examination record references the 2008 MRI as showing "some impingement on the right L5 nerve root," the ALJ reconciled any purported inconsistency by identifying Dr. Shah's clinical neurological exam findings that were consistent with his conclusion that "contemporary examination [to the MRI] showed no evidence of nerve root impingement . . . ." (Tr. 603, 719, 726).  Thus, the record as a whole does not suggest the ALJ failed to consider or selectively rejected significantly probative evidence, but instead demonstrates that any purported inconsistency was resolved by the ALJ implicitly through her factual analysis.

Accordingly, the Court finds that the ALJ articulated "good reasons" for not discounting Dr. Wunder's opinions, and these objections are overruled.

### B.  Objections at to RFC

#### 1. Scrutiny of Opinions of Dr. Hutson and Dr. Hill

Plaintiff's objection as to the RFC is that the Magistrate Judge erred by not considering the inconsistencies between the opinions of Dr. Hutson and Dr. Hill and the other record evidence in the same way that she examined the inconsistencies between the opinions of the treating physicians and the other record evidence.  (Doc. 17, p. 13).  He claims that the failure to consider such inconsistencies runs contrary to the recent Sixth Circuit decision in *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 379-80 (6th Cir. 2013).  Having reviewed the issue de novo in light of Plaintiff's objection, the Court finds no reversible error.

In *Gayheart*, the Sixth Circuit examined, among other issues, whether the ALJ properly relied on the opinions of consultative doctors.  *Id.* at 379.  Although the ALJ rigorously scrutinized the opinions of the treating physicians in deciding to give them little weight, the Sixth Circuit determined that he did not apply the same level of scrutiny to the opinions of the

consultative doctors. *Id.* It specifically noted that the ALJ's decision provides no indication he applied the factors in 20 C.F.R. § 404.1527(c) of supportability, consistency, or specialization when weighing the consultative doctors' opinions. *Id.* It criticized the ALJ's failure to acknowledge even more flagrant inconsistencies in the opinions of the consultative doctors, stating that a "more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires." *Id.* at 379-80.

*Gayheart* has subsequently been interpreted to "merely reinforce Sixth Circuit precedent that the Social Security regulations require two distinct analyses and standards" in assessing the opinions of physicians. *Hauser v. Comm'r of Soc. Sec.*, No. 1:12-cv-796, 2014 U.S. Dist. LEXIS 1808, at *17 (S.D. Ohio Jan. 6, 2014). The first analysis concerns the controlling weight to give to the treating physician, which the ALJ here properly engaged in for the reasons explained herein and in the Report. *See id.* Having made the determination that the opinions of Dr. Murphy and Dr. Wunder were not entitled to controlling weight, the ALJ could engage in the factor-based analysis set forth in 20 C.F.R. § 404.1527(c)(2)-(6).

The Court does not find that Plaintiff's objections demonstrate that the ALJ improperly scrutinized the opinion of Dr. Hutson or Dr. Hill under *Gayheart*. Plaintiff does not argue that the ALJ plainly failed to consider *all* or *most* of the relevant factors in 20 C.F.R. § 404.1527 in determining the weight to give to their opinions, but instead argues only that the ALJ failed to consider equivalent inconsistencies in Dr. Huston's and Dr. Hill's RFC opinions.

### a. Dr. Hutson

Plaintiff raises two objections as to Dr. Hutson. First, he references Dr. Hutson's ultimate conclusion that Plaintiff could lift up to twenty pounds, which he argues is inconsistent with Dr.

Hutson's own testimony and the testimony of the VE as to Plaintiff being limited to sedentary work. (Doc. 17, p. 14). The Court disagrees that the testimony is internally inconsistent. Rather, Dr. Hutson suggested that a sedentary level may be appropriate, but then explained that Plaintiff had the strength to lift up to twenty pounds but would have difficulty lifting with the right upper extremity. (Tr. 948-49).[1] The ALJ considered that opinion in its entirety in presenting the hypothetical question to the VE. (Tr. 968-69). The VE interpreted Dr. Hutson's testimony to be "basically" a sedentary limitation, and he identified three sedentary jobs that Plaintiff could perform within the provided limitations. (Tr. 969-70). The Court does not find that testimony demonstrates that the ALJ failed to engage in the requisite scrutiny of Dr. Huston's opinion.

Second, Plaintiff contends that the ALJ should have, but did not, address inconsistencies in the record concerning Dr. Hutson's testimony that Plaintiff could "stand and/or walk 6 hours per day and could sit 6 hours per day, with a sit/stand option permitting him to stand up for 2-5 minutes every hour." (Doc. 17, p. 15) (citing Tr. 608). Plaintiff points to Dr. Stambough's June 2004 opinion that Plaintiff "should be able to sit and stand as needed" and to Dr. Hill's October 2004 opinion wherein he reached the same conclusion as Dr. Stambough. (Doc. 17, p. 15) (citing Tr. 192, 335). He further points out that Dr. Murphy, Dr. Wunder and Dr. Lee all noted that Plaintiff could not sit or stand for extended periods of time, and he questions why the ALJ did not explain the inconsistencies between those opinions and the opinion of Dr. Hutson. (Doc. 17, p. 15) (citing Tr. 448, 682, 689, 701).

Having reviewed the record de novo, the Court finds no reversible error in that regard. As the Magistrate Judge correctly concluded, the ALJ reasonably credited Dr. Hutson's opinion

---

[1] Consistently, Dr. Huston later testified that Plaintiff "could approach some of the light jobs" but would mostly have to do sedentary work. (Tr. 958).

concerning the sit/stand option after addressing and sufficiently explaining with good reason his decisions not to accept the more extreme limitations of the other physicians. (Doc. 13, p. 24). With respect to Dr. Stambough and Dr. Hill, the ALJ recognized they opined that Plaintiff should be able to sit and stand "as needed" (Tr. 16-17),[2] but explained that those opinions were rendered in June 2004 and October 2004 following Plaintiff's March 2004 lumbar fusion surgery (Tr. 16, 601). After the surgery had occurred, Dr. Stambough had opined that Plaintiff was "improving" and would "show even further improvements over time," but the fusion would take somewhere between 6 to 18 months to mature and finalize" and he would not be advised to return to work above the "medium to moderate level." (Tr. 601) (citing Tr. 185).[3] The ALJ then documented Plaintiff's numerous normal neurological and other favorable clinical findings post-surgery. (Tr. 601-07). Although not expressly stated by the ALJ, his decision reflects that he viewed the opinions as relevant for the immediate post-surgery period as Plaintiff recovered from surgery. (Tr. 601). That view is substantially supported by the record evidence.

The ALJ also considered Dr. Murphy's opinions on his sit/stand limitations, and incorporated them to the extent they were not inconsistent with the overall record evidence. (Tr. 604). The ALJ plainly explained that he rejected the more extreme limitations because they were not based on treatment notes consistent with disabling limitations and because Dr. Murphy focused heavily on Plaintiff's financial status which has no bearing on a disability determination. (Tr. 604). Similarly, the ALJ plainly rejected the more extreme sit/stand limitations set forth by Dr. Wunder as unreliable, for the multiple reasons set forth in the decision that have been previously explained by the Court. (Tr. 604-06). As for Dr. Lee, the ALJ accepted his sit/stand limitations to the extent they are not inconsistent with the ALJ's residual functional capacity

---

[2] The ALJ incorporated by reference his prior decision of April 26, 2007. (*See* Tr. 598) (citing Tr. 12-19).

[3] Notably, Dr. Hinzman opined in May 2004 that no sit/stand option was necessary. (Tr. 16, 343).

assessment, noting that his restrictions are based largely on Plaintiff's subjective complaints and that his examinations showed few abnormalities.  (Tr. 607).[4]

Considering the overall evidence of record set forth by the ALJ and his well-supported explanations concerning the sit/stand option specifically, it was not error for the ALJ to credit the opinion of Dr. Hutson that provided a less extreme sit/stand limitation.[5]   Indeed, it is the responsibility of the ALJ to make the RFC determination considering the record evidence as a whole.  20 C.F.R. §§ 404.1545; 404.1546(c).

### b.  Dr. Hill

Plaintiff also takes issue with the Magistrate Judge's conclusion that the ALJ sufficiently explained her reasons for continuing to rely on Dr. Hill's opinion.  (Doc. 17, p. 15).  He argues that although the Magistrate Judge recognized that Dr. Hill did not have access to a complete record at the time of the opinion, she determined that the ALJ properly gave his opinion "great weight" even though Plaintiff's condition continued to worsen after 2004.  (Id.)

Upon de novo review, the Court agrees with the conclusion of the Magistrate Judge.  (Doc. 13, p. 22-23).  The ALJ may rely on opinions of medical professionals who did not have complete access to the record at the time of their opinion, but the Sixth Circuit requires some indication that the ALJ considered the subsequent records before giving greater weight to an opinion that was not based on a review of the complete case record.  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (citing *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007)).  Here, the ALJ's decision plainly reflects that she considered the subsequent case records,

---

[4] Dr. Lee opined that Plaintiff is "unable to sit or stand for long periods of time" without any indication as to what may constitute "long periods of time."  (Tr. 702).

[5] Of relevance is Plaintiff's testimony on April 23, 2007 that he could sit for "about half an hour" or "45 minutes" and could stand for about the same amount of time.  (Tr. 527-28).  The ALJ pointed out that testimony specifically in his April 26, 2007 decision, which was incorporated by reference in the April 8, 2011 decision.  (Tr. 18, 598).

including records of Plaintiff's complaints of worsening pain and degenerative disc disease, before giving weight to Dr. Hill's opinion.  (*See* Tr. 598-608).  The ALJ specifically explained that she continued to rely upon Dr. Hill's opinion because the objective findings did not demonstrate worsening of his condition after October 2004 when Dr. Hill rendered his opinion.  (Tr. 608).  The ALJ supported that determination with her prior explanation of factual findings, in which she accurately noted multiple instances of normal clinical findings throughout the relevant time period as well as the fact that Plaintiff was not at that time on any strong pain medication.  (Tr. 601-08).

In opposing that finding, Plaintiff cites to Dr. Stambough's 2004 statement that Plaintiff "seems to be getting worse, not better."  (Doc. 17, p. 15).  A review of the statement, however, reveals that consistent with the ALJ's determination, there were no supporting objective findings of that worsening, as Dr. Stambough explained Plaintiff had a good response initially to the surgery but "now has a plethora of complaints and somatization."  (Tr. 191) (emphasis added).  Further, the ALJ acknowledged in his decision that Plaintiff expressed he was experiencing pain, and incorporated to a degree his subjective complaints of pain into his RFC, as will be subsequently explained herein.

Plaintiff also cites to Dr. Stambough's statements about degeneration to demonstrate worsening of his condition.  However, the ALJ acknowledges throughout his decision Plaintiff's degenerative conditions, but explains that Dr. Stambough recommended "conservative" treatment and that the overall clinical findings were primarily normal over the course of the relevant time period.  (Tr. 601-08).  Although Dr. Hutson acknowledged the continuing spinal degeneration in his testimony, he disagreed with Dr. Wunder's conclusion that Plaintiff's records showed Plaintiff's condition had worsened to the point of disability.  (Tr. 955).

13

Accordingly, the Court finds no reversible error, and Plaintiff's above objections are overruled.

### C.    Objection as to VE Hypothetical Question

Plaintiff's objection as to the VE hypothetical question raises essentially the same arguments made above with respect to the RFC as to whether the ALJ reasonably credited Dr. Hutson's opinion on the sit/stand option.  (Doc. 17, p. 16).  For the same reasons identified above, that objection is overruled.

As for Plaintiff's additional argument that neither the ALJ nor the Magistrate Judge considered Dr. Wunder's assessment that Plaintiff would miss four days of work and the VE's corresponding testimony (Doc. 17, pp. 16-17), the Court finds no error in that respect.  The ALJ provided good reasons for discounting Dr. Wunder's opinion, and thus, she was not required to accept that limitation of Dr. Wunder.  Further, there is no indication that the ALJ actually did accept that limitation of Dr. Wunder.  The ALJ's hypothetical questions presented to the VE need only incorporate the limitations that she accepted as credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).  The ALJ's failure to include that limitation of Dr. Wunder in her hypothetical to the VE indicates she did not accept that limitation as credible. (Tr. 966-72).[6]   Other than the discredited opinion of Dr. Wunder, Plaintiff has identified no record evidence in his objections that is significantly probative of such a limitation. Accordingly, that objection is overruled.

### D.    Objection on Credibility Determination

Plaintiff contends that the Magistrate Judge erred by affirming the credibility findings of the ALJ.  (Doc. 17, p. 18).  He specifically objects on three bases.  First, he contends that the Magistrate Judge failed to recognize that the ALJ should have found Plaintiff disabled after

---

[6] It was Plaintiff's counsel, not the ALJ, that presented the limitation of Dr. Wunder to the VE.  (Tr. 984).

finding impairments that could reasonably be expected to cause the alleged symptoms.  (Doc. 17, p. 18).  Second, he argues that the Magistrate Judge failed to recognize that all of the physicians acknowledged that Plaintiff was experiencing severe pain.  (Doc. 17, pp. 18-19).  Third, Plaintiff states that his reports of pain were consistent, and he points out that many instances of lesser pain cited by the Magistrate Judge were prior to his 2004 surgery, he was prescribed pain medication, and he had spasms.  (Doc. 17, p. 19).  He states that based on the VE's testimony, Plaintiff would be disabled if his alleged pain was fully credited.  (Doc. 17, p. 19).

When evaluating pain or other symptoms, an ALJ engages in a two-part analysis.  *Felisky v. Bowen*, 35 F.3d 1027, 1038 (6th Cir. 1994). Part one considers "whether there is objective medical evidence of an underlying medical condition." *Id.* (citation omitted). If such objective medical evidence exists, then part two requires consideration of two alternative questions: (1) whether objective medical evidence confirms the severity of the alleged pain or other symptom arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain or other symptom.  *Id.*  An ALJ's findings concerning the credibility of a claimant's testimony about his or her pain or other symptoms "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id.*

Here, the Court agrees with the Magistrate Judge that the ALJ's credibility determination is entitled to deference.  The ALJ determined that Plaintiff "clearly does feel some pain and while the mechanism of his pain may be poorly understood, there is evidence to support his complaints – to a degree."  (Tr. 608).  However, she discounted Plaintiff's allegations that his

15

pain was disabling on the basis that she could not "ignore the substantial evidence indicating that [Plaintiff's] pain is out of proportion to the medical findings." (Tr. 608). The ALJ's assessment of the medical evidence, which is supported by substantial evidence as explained above and in the Report, substantiates the ALJ's finding that the objective evidence does not confirm the severity of the pain arising from those conditions. In particular, the ALJ identified numerous "normal" clinical findings throughout the relevant time period which would be inconsistent with reports of disabling pain.[7]

As for whether the objectively established medical condition is otherwise of such severity that it can reasonably be expected to produce the alleged disabling pain, that question is more difficult. Contrary to Plaintiff's arguments, the fact that the ALJ found that his objectively verified impairments could produce the allege symptoms does not mean that the reported severity of those symptoms must automatically be accepted by the ALJ. Rather, the record evidence must be considered in light of 20 C.F.R. § 404.1529(c)(3)(i)-(vii). The ALJ, however, need not use the factors as a checklist or discuss each and every one. *Bowman v. Chater*, No. 96-3990, 1997 U.S. App. LEXIS 34130 (6th Cir. Nov. 26, 1997). On this issue, the Court recognizes that in remanding the case initially, it determined that the ALJ's credibility assessment appeared to be based solely on Dr. Hill's opinion, that is, the ALJ accepted the opinion of Dr. Hill that did not find disabling limitations over the subjective complaints of Plaintiff as to disabling pain and limitations. *Steagall v. Comm'r of Soc. Sec.*, No. 1:07-cv-961, 2009 U.S. Dist. LEXIS 24842, at *8-9 (S.D. Ohio Mar. 25, 2009). The Court stated: "Whether Dr. Hill's opinion can serve as substantial evidence is depend[e]nt upon whether her opinion

---

[7] The Regulations provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §404.1529(c)(2). Such regulation is worth noting even though Plaintiff does not raise any objection concerning that regulation.

deserved greater weight than Drs. Wunder and Murphy." *Id.*  In her decision on remand, the ALJ supported with substantial evidence, for the reasons previously explained, her decision to give more weight to Dr. Hill's opinion than to Dr. Wunder's or Dr. Murphy's opinion.  That error thus was remedied and Dr. Hill's opinion may serve as substantial evidence.  Not only did Dr. Hill not find that Plaintiff was disabled, but Dr. Hill also determined that Plaintiff had pain but still could perform chores, drive, and engage in self-care.  (Tr. 353).[8]  That finding is consistent with the ALJ's finding of activities reported by Plaintiff in September 2004 and again in May 2010 to Dr. Sexton.  (Tr. 350, 695).  While Plaintiff dismisses the discussion of his daily activities as irrelevant to his pain complaints (Doc. 17, p. 20 n. 2), the regulations plainly permit the ALJ to consider the daily activities in assessing his subjective complaints of pain. 20 C.F.R. § 404.1529(3)(i).

The ALJ also had difficulty completely reconciling Plaintiff's long-term use of severe pain killers with his refusal to take such medicines for pain while continuing to allege disabling and incapacitating pain.  (Tr. 607).  The ALJ's consideration of that evidence was proper under the regulations.   20 C.F.R. § 404.1529(3)(iv).   While Plaintiff points to evidence that he complained about Oxycontin "knocking him out" and that his switch occurred after the date last insured, it was not error for the ALJ to question on a longitudinal level the reason such a decision was made after a significant time on more severe pain killers.  Although Plaintiff characterizes the ALJ's assessment as discounting Plaintiff's credibility based solely on his use of an over-the-counter medicine, the ALJ's statements indicate she was more concerned with the sudden shift away from his long-term treatment plan even with allegations of disabling pain than with the particular medications at issue.  Of further note are the inconsistencies in Plaintiff's pain reports

---

[8] This Court recognized that finding in its previous opinion as well.  *Steagall v. Comm'r of Soc. Sec.*, No. 1:07-cv-961, 2009 U.S. Dist. LEXIS 24842, at *9 n. 2 (S.D. Ohio Mar. 25, 2009).

over time that, as noted by the Magistrate Judge, reflect that Plaintiff was not always reporting disabling pain as he suggests.[9]  In May 2005, Plaintiff reported to Dr. Wunder that his pain was "moderate" and in "varying degrees," he felt he "definitely improved," and he "wants to go back to work."  (Tr. 873).  In December 2005, he again reported to Dr. Wunder that he had "aching" and "moderate" pain at a severity level of "6," that Advil was helping, and that he was off Vicodin.  (Tr. 869-71).[10]  It was later noted in 2007 that Plaintiff had a good response to pain with "conservative treatment."  (Tr. 759).  Further, as pointed out by the ALJ in her first decision, Plaintiff testified in April 2007 testimony (Tr. 527-28) that he could sit for thirty to forty-five minutes at a time, stand for thirty to forty-five minutes at a time, and lift thirty pounds, which also are relevant under 20 C.F.R. § 404.1529(3).  (Tr. 18).  Although the Court agrees with Plaintiff that his spasms and use of prescription medicines over time to treat his pain should not be disregarded, they do not, as Plaintiff suggests, establish conclusively that his pain is disabling.[11]

As a whole, the ALJ's decision to credit Plaintiff's complaints of severe pain to a degree, but to discredit his complaints of disabling pain, is supported by substantial evidence.  Plaintiff's strong reliance on the testimony of Dr. Hutson (Tr. 608) does not preclude the Court from giving such deference to the ALJ's determination.  Not only did the ALJ explicitly acknowledge that Dr. Hutson agreed that the pain was severe before discounting Plaintiff's credibility, but it also is the

[9] The Magistrate Judge cited to several pre-surgery records in her analysis.  (Doc. 13, p. 28).  The undersigned disagrees with Plaintiff that those records are irrelevant to the discussion, given that he alleges a disability onset date, as amended, of July 29, 2003.  However, the Court will not address those records again here.

[10] The ALJ did not specifically discuss the 2005 records in this respect, but they are considered upon the Court's review of the record as a whole.

[11] Plaintiff cites to *Meece v. Barnhart*, 192 F. App'x 456, 463 (6th Cir. 2006), for the proposition that the prescription medicines "confirm" the disabling level of pain.  While the *Meece* court certainly noted that the ALJ found the disabling level of pain to be confirmed by the use of prescription pain medicines and anti-inflammatory medicine, the statement was dicta and does not constitute a legal holding that requires an ALJ to find disabling pain whenever medication is prescribed.  As for his citation to *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986), the court noted that muscle spasms could be consistent with severe pain, but did not indicate that notations of spasms required an ALJ to accept complaints of disabling levels of pain.

ultimate responsibility of the ALJ to determine whether Plaintiff suffers from severe disabling pain.  *Gaffney v. Bowen*, 825 F.2d 98, 101 (6th Cir. 1987).

As the Magistrate Judge recognized, these types of cases are particularly difficult. However, the Court still must defer to the ALJ's decision so long as substantial evidence exists in the record as a whole to support the ALJ's conclusion, even if there is substantial evidence to support a contrary conclusion as to the credibility of Plaintiff's pain complaints.  Accordingly, the Court finds no reversible error as to credibility, and the above objections are overruled.

## V.    **CONCLUSION**

Consistent with the foregoing, Plaintiff's Objections (Doc. 13) are **OVERRULED** and the Report (Doc. 17) is **ADOPTED**.  The decision of the Commissioner is hereby **AFFIRMED** and this case is **CLOSED**.  The request for oral argument is denied.

**IT IS ORDERED**.

s/Michael R. Barrett
Michael R. Barrett, Judge
United States District Court